## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OPTIMA SPECIALTY STEEL, INC., *et al.*,[1] | Case No. 16-12789 (KJC) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B) AND (IV) GRANTING RELATED RELIEF

The above captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") file this motion (the "Motion") for entry of an interim order, substantially in the form attached hereto (the "Interim Order") and a final order (the "Final Order" and together with the Interim Order, the "Cash Collateral Orders"): (I) authorizing the Debtors to use Cash Collateral (as defined in the Interim Order) subject to the terms and conditions set forth in the Interim Order, (II) granting certain adequate protection to the Secured Parties (defined below) as a result of the use of the Prepetition Collateral (as defined herein), including Cash Collateral, (III) scheduling, pursuant to Bankruptcy Rule 4001(d), a final hearing on this Motion (the "Final Hearing") to consider entry of the Final Order, and (IV) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Optima Specialty Steel, Inc., 200 S. Biscayne Blvd., Suite 5500, Miami, FL 33131-2310 (0641); Michigan Seamless Tube LLC, 400 McMunn Street, South Lyon, MI 48178 (3850); Niagara LaSalle Corporation, 1412 150th Street, Hammond, IN 46327 (0059); KES Acquisition Company d/b/a Kentucky Electric Steel, 2704 South Big Run Road, Ashland, KY 41102 (2858); and The Corey Steel Company, 2800 South 61st Court, Cicero, IL 60804 (0255).

**Status of the Cases**

1.     On the date hereof the Debtors commenced these chapter 11 cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.     The Debtors are in possession of their properties and are operating and managing their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No request has been made for the appointment of a trustee or examiner and the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors.

**Jurisdiction, Venue and Statutory Predicates**

4.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28. U.S.C.§§ 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory basis for the relief requested herein are sections 105, 361, 362, 363, and 552 of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1(b), 4001-2, and 9013(1) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

### A. General

7.      The Debtors are leading independent manufacturers of specialty steel products. These steel products include (i) special bar quality and merchant bar quality hot rolled steel bars, (ii) value-added precision-tolerance, cold drawn seamless tubes, and (iii) high quality engineered cold finished steel bars.  The Debtors' products are utilized across a diversified range of end markets, including transportation (e.g. automotive), energy (e.g. oil and gas shale extraction), agriculture, power generation, yellow goods/construction equipment, railroad car, industrial chain manufacturing, and trailer support beam flanges.

8.      All of the Debtors' manufacturing facilities are located in the United States, and each of the Debtors' operating units have operated in the steel industry for more than 50 years. In the aggregate, the Debtors have more than one thousand customers in the United States. These customers span many industries including transportation, energy, agriculture and power generation.  The Debtors collectively employ more than 900 people.

9.      Although the Debtors' business is fundamentally sound, it has been affected by a period of macroeconomic and industry distress.  These external and other factors rendered the Debtors incapable of repaying their long-term indebtedness at maturity.  Accordingly, the Debtors have sought protection under Chapter 11 of the Bankruptcy Code to provide "breathing room" during which they will assess strategic options, address operational issues and consider restructuring proposals.  During this period, the Debtors intend to continue their operations in the ordinary course of business.

10.      A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Cases, is more fully set forth in the

*Declaration of Mordechai Korf in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

### B. Debtors Have an Immediate Need to Use Cash Collateral

11.    The Debtors' access to Cash Collateral is absolutely necessary to preserving and maximizing value for the Debtors' stakeholders. Absent approval of the Interim Order, the Debtors would have insufficient liquidity to continue to operate their businesses and pay costs associated with these Cases. Thus, the Debtors respectfully request authority to use Cash Collateral, subject to the terms and conditions set forth in the Cash Collateral Orders.

12.    The Interim Order provides certain adequate protection to the Indenture Trustee, for the benefit of itself and the Secured Noteholders, to protect against any diminution in value arising from the Debtors' use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  Prior to the Final Hearing, the Debtors further propose to make distributions pursuant to a budget that will be attached to the Interim Order (the "Budget") subject to certain permitted variances.  The Debtors will file a copy of the Budget prior to the hearing on the Interim Order.

13.    Access to Cash Collateral on an interim basis, and ultimately on a final basis, will provide the Debtors with the liquidity necessary to operate their business in the ordinary course during the initial weeks of these Cases while the Debtors negotiate the terms of post-petition debtor-in-possession financing.  The Debtors anticipate a need for debtor-in-possession financing in January 2017.  Certain Secured Noteholders have indicated an interest in providing such financing and the Debtors have also received indications of interest from their equityholders.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the First Day Declaration.

Without the immediate access to liquidity contemplated by this Motion, the Debtors' ability to negotiate debtor-in-possession financing and navigate through the chapter 11 process will be jeopardized, all to the detriment of the Debtors' stakeholders. As a result, the Debtors have an immediate need to use Cash Collateral.

**C. The Debtors' Prepetition Capital Structure**

14.     As of the Petition Date, the Debtors had outstanding debt obligations in the aggregate amount of over $259 million, including accrued and unpaid interest, consisting primarily of their obligations under the Secured Notes and the Unsecured Notes (collectively, the "**Notes**").

i.     Secured Notes

15.     On December 5, 2011, in connection with its acquisition of Niagara, OSS issued $175 million aggregate principal amount of 12.5% senior secured notes due December 15, 2016 to various holders that may trade from time to time (the "Secured Noteholders"). The Secured Notes were priced at 96.0% of par resulting in a yield to maturity of 13.62% with interest payable semi-annually in arrears on June 15 and December 15 of each year.

16.     In connection with the issuance of the Secured Notes, OSS and its existing and future subsidiaries and Wilmington Trust, National Association as trustee and noteholder collateral agent (the "Indenture Trustee" and together with the Secured Noteholders, the "Secured Parties"), entered into an indenture dated December 5, 2011, which governs the Secured Notes. The Secured Notes are fully guaranteed, on a senior secured basis, by each of the Operating Subsidiaries. The Secured Notes and related guarantees are secured by substantially all of the Debtors' assets, subject to permitted liens and specified excluded assets (the "Prepetition Collateral").

17.     The approximate amount currently outstanding under the Secured Notes is $171 million, which includes interest in the approximate amount of $10 million through the Petition Date.

ii.     Unsecured Notes

18.     On January 29, 2015, in connection with the acquisition of CSC, OSS issued $85 million of senior unsecured notes at 100% of face value, bearing interest at 12.0% per annum, payable semi-annually in arrears on March 15 and September 15 of each year.  The Unsecured Notes mature on the earlier of December 30, 2016, or 15 days after the maturity date of the Secured Notes.

19.     In connection with the issuance of the Unsecured Notes, OSS and its existing and future subsidiaries and Wilmington Trust, National Association as trustee, entered into an indenture dated January 29, 2015, which governs the Unsecured Notes.  The Unsecured Notes are fully guaranteed by each of the Operating Subsidiaries.

20.     In addition to providing the financing for the Corey acquisition, proceeds from the Unsecured Notes were used to redeem the $35 million principal amount of unsecured notes issued in 2013 in connection with the acquisition of KES.

21.     The Unsecured Notes are currently held solely by DDJ Capital Management, LLC. The approximate amount currently outstanding under the Unsecured Notes is $87.5 million, which includes interest in the approximate amount of $2.5 million as of the Petition Date.

iii.     Unsecured Claims and Equity

22.     The Debtors have general unsecured claims which include, among others, trade claims, litigation claims and environmental claims.

23.    OSS is wholly-owned by Optima Acquisitions, LLC, a privately owned U.S.-based investment firm.  The equity of Optima Acquisitions, LLC, is owned directly or indirectly by three individuals: Mordechai Korf (33%), Gennadiy Bogolyubov (33%) and Igor Kolomoyskyy (33%).

**Relief Requested**

24.    By and through this Motion, the Debtors seek entry of the Cash Collateral Orders: (I) authorizing the Debtors to use Cash Collateral, subject to the terms and conditions set forth therein; (II) granting certain adequate protection to the Secured Parties as a result of the use of the Prepetition Collateral, including Cash Collateral; (III) scheduling the Final Hearing; and (IV) granting related relief.

**Summary of the Material Terms of the Interim Order[3]**

25.    The following chart summarizes the material terms of the Interim Order in accordance with Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(ii):

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| Entities with an Interest in Cash Collateral<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(i) | Wilmington Trust, National Association as Indenture Trustee under the Indenture<br><br>The Secured Noteholders under the Indenture | Interim Order ¶F |
| Purpose for Use of Cash Collateral<br><br>Fed R. Bankr. P. 4001(b)(1)(B)(ii); Del Bankr. L.R. 4001-2(a)(i) | The Debtors requested entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtors have an immediate need to use the Prepetition Collateral, including Cash Collateral to, among other things, preserve and maintain the going concern value of the Debtors, absent which immediate and irreparable harm will result to the Debtors, their estates, and their creditors. The preservation and maintenance of the Debtors' assets and business is necessary to maximize the value of the Debtors' estates. Absent the Debtors' ability to use the Prepetition Collateral, including Cash Collateral, the Debtors would not have sufficient available sources of working capital or financing and would be unable to pay their operating | Interim Order ¶G |

---

[3] The summary of the Interim Order is qualified in all respects by reference to the Interim Order, and to the extent there are any inconsistencies between this Motion, the summary of the Interim Order and the Interim Order, the Interim Order shall govern.

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| | expenses or maintain their assets, to the severe detriment of their estates and creditors. Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtors' ability to maximize the value of their chapter 11 estates, (ii) in the best interests of the Debtors and their estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors, their creditors, and their assets, remaining business, goodwill, and reputation. | |
| Budget | Except as otherwise provided herein, the Debtors may only use Cash Collateral in a manner set forth in the budget attached to the Interim Order as **Exhibit 1** (as the same may be updated in accordance with the terms of the Interim Order, the "Budget"), including without limitation, for: (i) working capital requirements; (ii) general corporate purposes; and (iii) the costs and expenses (including making adequate protection payments and, subject to further order of the Court, payment of the allowed fees and expenses of professionals retained by the Debtors' estates) of administering the Cases (including payments under the Carve-Out as provided herein).<br><br>No less frequently than every four weeks commencing on January 4, 2017, the Debtors shall deliver an updated budget (each, a "Proposed Budget") to the Indenture Trustee and counsel to the Secured Noteholder Group, which Proposed Budget, upon written approval by counsel for the Secured Noteholder Group (with the consent of the Secured Noteholder Group), shall become the Budget effective as of the first Monday following such written approval; provided, however, that unless and until counsel for the Secured Noteholder Group (with the consent of the Secured Noteholder Group) shall have approved in writing any Proposed Budget or any other proposed modification to the Budget then in effect, the Debtors shall still be subject to and be governed by the terms of such Budget then in effect in accordance with the terms of the Interim Order.<br><br>Commencing on the first Monday following the Petition Date (or the next business day if such day is not a business day), and continuing every week thereafter, the Debtors shall be required to deliver to the Indenture Trustee and counsel to the Secured Noteholder Group a weekly variance report from the previous week comparing the actual receipts and disbursements of the Debtors with the receipts and disbursements in the Budget (the "Budget Variance Report").. | Interim Order ¶3 |
| Duration of Use of Cash Collateral/Termination Events<br><br>Fed. Bankr. R. P. 4001(b)(1)(B)(iii); Del. Bankr. L.R. 4001-2(a)(ii) | The Debtors' authorization, and the Secured Parties' consent, to use Cash Collateral shall terminate without further notice or action by the Court on the earliest to occur of (the "Termination Date") any of the following (each a "Termination Event"):<br>• the first business day that is 35 days after the Petition Date if the Final Order has not been entered by this Court on or before such date;<br>• the failure of the Debtors to pay the Adequate Protection Fees after such fees become due;<br>• the failure of the Debtors to (i) comply with any material provision of the Interim Order; (ii) comply with any other covenant or agreement specified in the Interim Order in any material respect; (iii) comply with clauses (a), (b) or (c) of paragraph 3 of the Interim Order;<br>• the Debtors shall grant, create, incur or suffer to exist any | Interim Order ¶5 |

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| | postpetition liens or security interests other than (i) those granted pursuant to the Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business; <br> • the entry of an order dismissing any of the Cases or conversion any of the Cases to a case under chapter 7 of the Bankruptcy Code; <br> • the entry of an order in any of the Cases appointing a chapter 11 trustee or an examiner with expanded powers; <br> • the Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof; <br> • the entry of an order in any of the Cases modifying, staying, reversing or vacating the Interim Order, without the prior consent of the Secured Noteholder Group; <br> • except as expressly allowed in the Interim Order, an order of this Court shall be entered granting any lien on, or security interest in, any Prepetition Collateral in favor of any party other than the Indenture Trustee or the Secured Noteholders, or granting an administrative claim payable by a Debtor to any party other than the Indenture Trustee or the Secured Noteholders, that is senior to, or *pari passu* with, the Adequate Protection Superpriority Claim (as defined in the Interim Order), without the express written consent of the Secured Noteholder Group; <br> • The Debtors file or support a motion challenging the validity, extent or priority any of the Prepetition Liens or Secured Obligations; <br> • The entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $100,000; or <br> • The entry of any postpetition judgment against any Debtor in excess of $100,000. | |
| Proposed Adequate Protection <br><br> Fed. Bankr. R. P. 4001(b)(1)(B)(iv); Del Bankr. L.R. 4001-2(a)(i)(B) | Subject only to the Carve-Out and the terms of the Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate postpetition diminution in value of such interests (each such diminution, a "Diminution in Value"), the Indenture Trustee, for the benefit of itself and the Secured Noteholders, is hereby granted the following: <br><br> Adequate Protection Liens | Interim Order ¶8 |

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| | As security for and solely to the extent of any Diminution in Value, the Indenture Trustee, for the benefit of the Secured Noteholders, is hereby granted, additional and replacement valid, binding, enforceable non-avoidable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action, including causes of action arising under section 549 of the Bankruptcy Code (but excluding any causes of action under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions")), all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, and subject to entry of the Final Order, all proceeds and property recovery in respect of Avoidance Actions (collectively, the "Adequate Protection Collateral").Subject to the terms of the Interim Order, the Adequate Protection Liens shall be subordinate only to the (A) Carve-Out and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Secured Parties as permitted by the terms of the Secured Note Documents. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code).<br><br>Adequate Protection Superpriority Claims<br><br>To the extent of any Diminution in Value, as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Indenture Trustee is hereby granted, for the benefit of itself and the Secured Noteholders, an allowed administrative expense claim in the Debtors' Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "Adequate Protection Superpriority Claim"), except the | |

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| | Carve-Out. Subject to the Carve-Out in all respects, the Adequate Protection Superpriority Claim will not be junior to any claims and shall have priority over all administrative expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(d), 726, 1113 and 1114.<br><br>Fees and Expenses.<br><br>As further adequate protection, the Debtors are authorized and directed to pay, without further Court order, reasonable and documented fees and expenses (the "Adequate Protection Fees"), whether incurred before or after the Petition Date, of the Indenture Trustee and the ad hoc group of unaffiliated holders of a majority in amount of the Secured Notes represented by Akin Gump Strauss Hauer & Feld LLP (the "Secured Noteholder Group"), including, without limitation, the fees and expenses of (a) one counsel for the Indenture Trustee and (b) one local counsel, one lead counsel (Akin Gump Strauss Hauer & Feld LLP) and one financial advisor for the Secured Noteholder Group. The Debtors shall serve copies of the invoices supporting the Adequate Protection Fees on the U.S. Trustee and the Creditors' Committee, if any, and any Adequate Protection Fees shall be subject to prior ten (10) day review by the U.S. Trustee and by the Creditors' Committee, if any, and in the event either the U.S. Trustee or the Creditors' Committee shall file with this Court an objection to any such legal invoice, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Court. If no objection is filed within such ten (10) day review period, such invoice shall be paid without further order of the Court within five (5) days following the expiration of the foregoing review period and shall not be subject to any further review or challenge.<br><br>Postpetition Accrual of Interest<br><br>As further adequate protection, the Secured Obligations will continue to accrue interest at the default contract rate set forth in the Secured Notes Documents. | |
| Carve-Out<br><br>Del. Bankr. L.R. 4001-2(a)(i)(F) | For purposes hereof, the "Carve-Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a); (ii) fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section 726(b); (iii) all accrued but unpaid costs, fees, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any official committee appointed in these Cases, including the Creditors' Committee (the "Committee Professionals" and the Debtor Professionals, collectively, the "Professional Persons") at any time before or on the first business day following delivery by the Indenture Trustee or the Secured Noteholder Group of a Carve-Out Trigger Notice, to the extent allowed at any time whether allowed by interim order, procedural order, or otherwise (the "Pre-Termination Amount"); and (iv) after the first business day following delivery by the Indenture Trustee or | Interim Order ¶9 |

11

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| | the Secured Noteholder Group of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, the payment of Professional Fees of Professional Persons in an aggregate amount not to exceed (x) with respect to the Debtor Professionals, $250,000 and (y) with respect to the Committee Professionals, $50,000 (the amounts set forth in the foregoing clauses (x) and (y) are collectively referred to as the "Post-Termination Amount," and together with the Pre-Termination Amount, the "Professional Fees Amount"); *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in preceding clauses (iii) and (iv). For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Indenture Trustee or the Secured Noteholder Group to the Debtors and their lead counsel, the U.S. Trustee, and lead counsel to the Creditors' Committee, if any, providing notice that the Termination Date has occurred.  On the day on which a Carve-Out Trigger Notice is given to the Debtors, such Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to (A) the Pre-Termination Amount *plus* (B) the Post-Termination Amount, and the Debtors shall deposit and hold any such amounts in a segregated account in trust for the Professional Persons (the "Professional Fees Reserve") (it being understood that the Secured Parties shall have a lien and security interest in any residual amount of such segregated account). For the avoidance of doubt, so long as the Carve-Out Trigger Notice shall not have been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Secured Notes Documents, the Carve-Out shall be senior to all liens and claims securing the Secured Notes Documents and the Adequate Protection Claims (as defined in the Interim Order), and any and all other forms of adequate protection, liens, or claims securing the Secured Obligations. Further, for the avoidance of doubt and notwithstanding anything herein to the contrary, following a Termination Event, the Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale of any assets) of the Debtors until the Professional Fees Reserve shall have been fully funded, but shall have a first priority, fully perfected, non-avoidable security interest in any residual interest in the Professional Fees Reserve, with any excess paid to the Indenture Trustee for application in accordance with the terms of the Interim Order and the Secured Notes Documents, as the case may be. | |
| Cross-Collateralization<br><br>Del. Bankr. L.R. 4001-2(i)(A) | None | N/A |
| Findings re Validity, Perfection and/or Amount | Without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests, or defenses prior to the expiration of the Challenge Period, the Debtors are providing for customary | Interim Order ¶F |

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| Del. Bankr. L.R. 4001-2(a)(i)(B) | stipulations regarding the amount, priority, validity and claims of the Secured Parties.[4] | |
| Challenge Period<br><br>Del. Bankr. L.R. 4001-2(a)(i)(B) | The acknowledgments, stipulations, admissions waivers and releases contained in the Interim Order shall also be binding upon all other parties in interest, including the Creditors' Committee, if any, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) such party, in each case, with requisite standing, has duly filed an adversary proceeding challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens or the Secured Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Notes Trustee or Prepetition Secured Noteholders in connection with any matter related to the Prepetition Collateral or Prepetition Secured Obligations by no later (i) with respect to any Creditors' Committee, the date that is sixty (60) days after the Creditors' Committee's formation or (ii) with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of the Interim Order (the time period established by the later of the foregoing clauses (i) and (ii), the "Challenge Period"); provided, however, that in the event that, prior to the expiration of the Challenge Period, (x) these chapter 11 cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these chapter 11 cases, then, in each such case, the Challenge Period shall be extended for a period of 60 days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing (x) and (y); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding. | Interim Order ¶4(a) |
| 506(c) Wavier<br><br>Del. Bankr. L.R. 4001-2(a)(i)(H) | Subject to and effective upon entry of the Final Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral (except to the extent of the Carve Out), the Indenture Trustee or the Secured Noteholders pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Secured Noteholder Group, and no such consent shall be implied from any other action, inaction, or acquiescence by the Indenture Trustee or any Secured Noteholder. | Interim Order ¶18 |
| Provisions Deeming Prepetition Debt to be Postpetition Debt<br><br>Del Bankr. L.R. 4001-2(a)(i)(E) | None | N/A |

---

[4]    The analysis of the Secured Noteholder Group's perfection is substantially complete; however, the Debtors are still awaiting receipt of certain documents to complete the analysis. The Debtors are endeavoring to complete that analysis before the hearing on this Motion. Nothing in this Motion shall be construed so as to waive the Debtors' right to complete this analysis.

| Material Terms | Summary of Material Terms | Relevant Paragraph of Interim Order |
|---|---|---|
| Non-Consensual Priming | None | N/A |

## Provisions to be Highlighted Pursuant to Local Rule 4001-2(a)(i)

26.     Local Rule 4001-2(a)(i) requires a debtor to: (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the proposed cash collateral order. *See* Del. Bankr. L.R. 4001-2(a)(i). As further set out in the provisions discussed in the Summary of Material Terms chart, the Debtors hereby disclose the below provisions (collectively, the "Highlighted Provisions") in accordance with Local Rule 4001-2(a)(i).

      a.   **Provisions that Grant Cross Collateralization (Del. Bankr. L.R. 4001-2(a)(i)(A)).** The Cash Collateral Orders do not provide for cross-collateralization, other than replacement liens as adequate protection.

      b.   **Findings of Fact (Del. Bankr. L.R. 4001-2(a)(i)(B)).** Without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests, or defenses prior to the expiration of the Challenge Period, as part of the Interim Order, the Debtors agree and stipulate to the amount, validity and priority of the Secured Parties' liens on the Prepetition Collateral. *See* Interim Order, Findings, ¶ F.

      c.   **506(c) Rights (Del. Bankr. L.R. 4001-2(a)(i)(C)).** Subject to and effective upon entry of the Final Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral (except to the extent of the Carve Out), the Indenture Trustee or the Secured Noteholders pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Secured Noteholder Group, and no such consent shall be implied from any other action, inaction, or acquiescence by the Indenture Trustee or any Secured Noteholder. *See* Interim Order, ¶18.

d. **Liens on Avoidance Actions (Del. Bankr. L.R. 4001-2(a)(i)(D)).** The Adequate Protection Liens as set forth in the Interim Order do not attach to any Avoidance Actions and proceeds or property recovered in respect of any Avoidance Actions. *See* Interim Order, ¶ 8(a).

e. **Provisions Deeming Prepetition Debt to be Postpetition Debt (Del. Bankr. L.R. 4001-2(a)(i)(E)).** The Cash Collateral Orders do not deem prepetition secured debt to be postpetition debt.

f. **Carve-Out (Del. Bankr. L.R. 4001-2(a)(i)(F)).** Professional Persons retained by the Creditors' Committee are included in the Carve-Out for any period prior to the delivery of a Carve-Out Trigger Notice (as defined in the Interim Order) and not to exceed $50,000 in the aggregate subsequent to the delivery of a Carve-Out Trigger Notice. The Adequate Protection Liens are subject to and subordinate to the Carve-Out. *See* Interim Order, ¶ 8. The Debtors believe that the treatment of Professional Persons is fair and reasonable given the expected activities of the Debtors and any Creditors' Committee during these Cases prior to and, if applicable, subsequent to the delivery of a Carve-Out Trigger Notice.

g. **Non-Consensual Priming (Del. Bankr. L.R. 4001-2(a)(i)(G)).** The Cash Collateral Orders do not provide for non-consensual priming of any secured lien.

h. **552(b)(1) Rights (Del. Bankr. L.R. 4001-2(a)(i)(H)).** Subject to and effective upon entry of the Final Order, the Secured Parties shall be entitled to all of the rights and benefits of section552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties as set forth in the Interim Order. *See* Interim Order ¶19.

## Basis for Relief

### A. The Debtors' Request to Use Cash Collateral and the Proposed Adequate Protection is Appropriate

27.    The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

28.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the

Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

29.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180—81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

30.     As set forth in the Summary of Material Terms, and in the Interim Order, the Debtors propose to provide the Secured Parties with Adequate Protection, including the Adequate Protection Liens, the Adequate Protection Superpriority Claims, Fees and Expenses and the Postpetition Accrual of Interest.

31.     The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Secured Parties from any diminution in value to the Collateral during the interim period. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Secured Parties is appropriate. Thus, the Debtors' proposed Adequate Protection is not only necessary to protect the Secured Parties against any diminution in value, but is also fair and appropriate on an interim basis under the circumstances of these Cases to ensure the Debtors are able to continue using the Cash Collateral in the near term, for the benefit of all parties in interest and their estates.

### B.  Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

32.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to Section 363 may not be commenced earlier than 14 days after the service of such motion. However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

33.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these Cases without access to cash. The Debtors will use cash to, among other things, continue operating their business and satisfy other working capital needs during these Cases. Substantially all of the

17

Debtors' available cash may constitute the Secured Parties' cash collateral, as that term is used by section 363(c) of the Bankruptcy Code. If accurate, the Debtors will therefore be unable to proceed with operating their business without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. In short, the Debtors' ability to finance their operations and the availability of sufficient working capital and liquidity to the Debtors through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtors' estates.

34.     The Debtors, therefore, seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

## Request for Final Hearing

35.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing within thirty days of the Petition Date and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## Wavier of Bankruptcy Rule 6004(a) and 6004(h)

36.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

37.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) Wilmington Trust, National Association, as Indenture Trustee to the indentures governing the Secured Notes and Unsecured Notes; (c) creditors holding the forty (40) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (d) the Office of the United States Attorney for the District of Delaware; and (e) the Internal Revenue Service.  As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered with respect to the Motion in accordance with the Local Rules.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

38.    No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

39.    WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request entry of the Cash Collateral Orders: (a) authorizing the Debtors to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein, (b) granting certain adequate protection to the Secured Parties, (c) scheduling the Final Hearing, and (d) granting related relief

Dated: December 15, 2016                    GREENBERG TRAURIG, LLP

                                            */s/ Dennis A. Meloro*
                                            Dennis A. Meloro (DE Bar No. 4435)
                                            The Nemours Building
                                            1007 North Orange Street, Suite 1200
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 661-7000
                                            Facsimile:  (302) 661-7360
                                            Email: melorod@gtlaw.com

                                            -and-

                                            Nancy A. Mitchell (*pro hac vice pending*)
                                            Greenberg Traurig, LLP
                                            200 Park Avenue
                                            New York, New York 10166
                                            Telephone:  (212) 801-9200
                                            Facsimile:  (212) 801-6400
                                            Email:  mitchelln@gtlaw.com

                                            -and-

                                            Paul J. Keenan Jr. (*pro hac vice pending*)
                                            John R. Dodd (*pro hac vice pending*)
                                            Ari Newman (*pro hac vice pending*)
                                            Greenberg Traurig, P.A.
                                            333 S.E. 2nd Avenue, Suite 4400
                                            Miami, FL 33131
                                            Telephone: (305) 579-0500
                                            Facsimile:  (305) 579-0717
                                            Email: keenanp@gtlaw.com
                                                    doddj@gtlaw.com
                                                    newmanar@gtlaw.com

                                            *Proposed Counsel for the Debtors*
                                            *and Debtors-in-Possession*