**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OPTIMA SPECIALTY STEEL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12789 (KJC)<br><br>(Jointly Administered) |

## INFORMATION PACKAGE SUMMARIZING PLAN AND CERTAIN PLAN TERMS, AND NOTICE OF: (I) APPROVAL OF DISCLOSURE STATEMENT; (II) HEARING TO CONSIDER CONFIRMATION OF THE PLAN; (III) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN; AND (IV) ADMINISTRATIVE CLAIMS BAR DATE

TO: ALL HOLDERS OF CLAIMS AND INTERESTS.[2]

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

### APPROVAL OF DISCLOSURE STATEMENT

By order dated [_____], 2017 [Docket No. ___] (the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") approved the *Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization of Optima Specialty Steel, Inc. and Its Affiliated Debtors and Debtors in Possession* filed on May __, 2017 [Docket No. ___] (as it may be further amended, supplemented or modified from time to time, the "**Disclosure Statement**"), pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), with respect to the *First Amended Joint Chapter 11 Plan of Reorganization of Optima Specialty Steel, Inc. and Its Affiliated Debtors and Debtors in Possession* dated May 24, 2017 [Docket No. 778] (as it may be further amended, supplemented or modified from time to time, the "**Plan**") and the Debtors' procedures for seeking confirmation of the Plan.

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Optima Specialty Steel, Inc., 200 S. Biscayne Blvd., Suite 5500, Miami, FL 33131-2310 (0641); Michigan Seamless Tube LLC, 400 McMunn Street, South Lyon, MI 48178 (3850); Niagara LaSalle Corporation, 1412 150th Street, Hammond, IN 46327 (0059); KES Acquisition Company d/b/a Kentucky Electric Steel, 2704 South Big Run Road, Ashland, KY 41102 (2858); and The Corey Steel Company, 2800 South 61st Court, Cicero, IL 60804 (0255).

[2] Capitalized terms used but otherwise not defined in this notice have meanings ascribed to such terms in the Disclosure Statement Order or the Plan, as applicable. In the event of any inconsistency between the terms of this Information Package and terms of the Plan, the terms of the Plan are controlling.

## CONFIRMATION HEARING

On **June 29, 2017, at 1:30 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing to consider the confirmation of the Plan (the "**Confirmation Hearing**") will be held before the Honorable Kevin J. Carey, United States Bankruptcy Court, at 824 Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801. The Confirmation Hearing may be adjourned from time to time. If the Confirmation Hearing is adjourned, such adjournment will be announced in open court and/or the Debtors will file a notice on the docket reflecting the same. The Plan may be amended, supplemented or modified from time to time, if necessary, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to Creditors or other parties in interest.

## NO ENTITLEMENT TO VOTE ON THE PLAN

In accordance with the terms of the Plan and the Bankruptcy Code, no Holders of any Claims against or Interest in the Debtors are entitled to vote on the Plan because all such Claims and Interests are Unimpaired by the Plan. As such, pursuant to section 1126(f) of the Bankruptcy Code, the Unimpaired Classes of Claims and Interests are deemed to have accepted the Plan.

## SUMMARY OF PLAN FUNDING AND
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

The Plan provides for a comprehensive reorganization of the Debtors that will (i) **leave all Allowed Claims Unimpaired, paying fixed, undisputed and liquidated claims in full in cash and reinstating contingent, disputed or unliquidated claims**, and (ii) leave Unimpaired the equity interests held by Optima Acquisitions, LLC (the "**Plan Sponsor**") as the sole common stock 100% shareholder of Debtor Optima Specialty Steel, Inc. ("**Optima**"), the parent of the remaining Debtors.

Specifically, the Plan Sponsor, which is the sole shareholder of Optima, will fund the Plan with the Plan Sponsor Contribution, a $200 million cash equity contribution to Reorganized Optima, as a contribution in respect of the Plan Sponsor's outstanding and Unimpaired Existing Optima Common Stock. Under the Plan, the Debtors will raise approximately $105 million from an exit financing term loan and approximately $35 million from an exit financing revolver, commitments for which will be obtained from one or more third parties. The Plan Sponsor's $200 million Plan Sponsor Contribution and the approximately $140 million of exit financing will fund the implementation of the Plan's provisions providing for Unimpaired treatment to all Allowed Claims and leave the Plan Sponsor (as the sole shareholder of Optima) Unimpaired. In return for the $200 million Plan Sponsor Contribution, the Plan Sponsor will retain its existing 100% equity interest in Optima.

The Plan proposes to leave Unimpaired the rights of Holders of Allowed Claims against and Interests in the Debtors. The classification and treatment of Claims and Interests under the Plan is described generally below. Certain Claims of the Debtors are not classified. The Plan

proposes to leave Unimpaired all such unclassified Allowed Claims of the Debtors. The treatment of unclassified Claims under the Plan is described generally below.

| UNCLASSIFIED CLAIMS ||
|---|---|
| **Description and Amount of Claims or Interests and Projected Recoveries** | **Summary of Treatment** |
| **Administrative Claims of all Debtors**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• Except to the extent that the Debtors, with the consent of the Plan Sponsor, or the Reorganized Debtors, as applicable, and a Holder of an Allowed Administrative Claim agree to a less favorable treatment, a Holder of an Allowed Administrative Claim (other than a DIP Claim, which shall be subject to <u>Article 2.2</u> of the Plan, or a Professional Claim, which shall be subject to <u>Article 2.3</u> of the Plan) shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim (and, in the case of Section 503(b)(9) Claims, post-Petition Date interest (if any) on terms and in an amount equal to post-Petition Date interest (if any) paid to General Unsecured Claims under Article 4.4(b) of the Plan) either (a) on the later of (x) the Initial Distribution Date; or (y) the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when an Administrative Claim becomes an Allowed Administrative Claim or (ii) 30 days after the date when an Administrative Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Administrative Claim; or (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; <u>provided, however</u>, that other than Holders of (i) a DIP Facility Claim, (ii) a Professional Claim, (iii) an Administrative Claim Allowed by an order of the Bankruptcy Court on or before the Effective |

| | |
|---|---|
| | Date, or (iv) an Administrative Claim that is not Disputed and arose in the ordinary course of business and was paid or is to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, the Holder of any Administrative Claim shall have filed a proof of Claim form no later than the Administrative Claims Bar Date and such Claim shall have become an Allowed Claim. Except as otherwise provided in the Plan and as set forth in Articles 2.2 or 2.3 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form contained in the Plan Supplement, with the Claims Agent and served on counsel for the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date. Any request for payment of an Administrative Claim pursuant to Article 2.1 of the Plan that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Reorganized Debtors. The Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval. In the event that the Reorganized Debtors object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. |
| **Priority Tax Claims of all Debtors**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• On the later of (a) the Initial Distribution Date or (b) the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when a Priority Tax Claim becomes an Allowed Priority Tax Claim or (ii) 30 days after the date when a Priority Tax Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Priority Tax Claim, except to the extent that the Debtors (or Reorganized Debtors) and a Holder of an Allowed Priority Tax Claim agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the Debtors (or the Reorganized Debtors) and such Holder, provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date, or (c) at the sole option of the Debtors, Cash in the aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five (5) years after the Petition Date pursuant to |

| | |
|---|---|
| | section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. |
| **DIP Claims**<br><br>**Estimated Recovery: 100%** | • **Unmpaired.**<br>• In full and final satisfaction, settlement, release, and discharge of and in exchange for each and every DIP Replacement Loan Claim, on the Effective Date, each Holder of a DIP Replacement Loan Claim shall be paid in full in Cash from the proceeds of the Exit Facilities and Plan Sponsor Contribution, with such payments to be distributed to the DIP Agent on the Effective Date for the ratable benefit of the Holders of DIP Replacement Loan Claims.<br>• In full and final satisfaction, settlement, release, and discharge of and in exchange for each and every DIP New Money Loan Claim, on the Effective Date, each Holder of DIP New Money Loan Claims shall be paid in full in Cash from the proceeds of the Exit Facilities and Plan Sponsor Contribution (after satisfying the DIP Replacement Loan Claims), with such payments to be distributed to the DIP Agent on the Effective Date for the ratable benefit of the Holders of DIP New Money Loan Claims.<br>• Upon the Effective Date, and upon receipt by the DIP Agent of Cash in the full amount of the DIP Claims, all Liens and security interests granted to secure the DIP Facility shall be deemed discharged, cancelled, and released and shall be of no further force and effect. To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any Liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any commercially reasonable steps requested by the Debtors or the Reorganized Debtors, at the expense of the Reorganized Debtors, that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests. |
| **Professional Fee Claims**<br><br>**Estimated Recovery:** | • **Unimpaired.**<br>• Subject to the Holdback Escrow Amount, on the Effective Date, the Reorganized Debtors shall pay all amounts owing to |

| 100% | Professionals for all outstanding amounts billed relating to prior periods through the Effective Date as to which no objection has been filed. No later than five (5) Business Days prior to the Effective Date, the Professionals shall estimate fees and expenses due for periods that have not or will not have been billed as of the Effective Date and shall deliver such estimate to counsel for the Debtors and such estimate shall be included in the Holdback Escrow Amount. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a professional's final request for payment of professional claims filed with the Bankruptcy Court. As soon as reasonably practicable after the Effective Date, a Professional seeking payment for estimated amounts as of the Effective Date shall submit a detailed invoice covering such period. Upon receipt of such invoice, the Debtors shall pay from the Holdback Escrow Account 80% of the invoiced fees and 100% of the invoiced expenses. |
|---|---|
| **CLASSIFIED CLAIMS** ||
| **Class 1 Claims: Other Priority Claims** <br><br> **Estimated Recovery: 100%** | • **Unimpaired.** <br><br> • Except as otherwise provided in and subject to Article 9.5 of the Plan, and except to the extent that a Holder of an Allowed Class 1 Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Class 1 Claim, each such Holder of an Allowed Class 1 Claim shall be paid in full in Cash on the later of (a) the Initial Distribution Date or (b) the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when a Class 1 Claim becomes an Allowed Class 1 Claim or (ii) 30 days after the date when a Class 1 Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Class 1 Claim; provided, however, that Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| **Class 2 Claims: Other Secured Claims** <br><br><br> **Estimated Recovery:** | • **Unimpaired.** <br><br> • Except as otherwise provided in and subject to Article 9.5 of the Plan, and except to the extent that a Holder of an Allowed Class 2 Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in |

7

| | |
|---|---|
| **100%** | exchange for each and every Allowed Class 2 Claim, each such Holder of an Allowed Class 2 Claim shall, at the election of the Debtors, with the consent of the Plan Sponsor, or the Reorganized Debtors, as applicable:<br><br>(i) have its Allowed Class 2 Claim Reinstated and rendered Unimpaired on the Effective Date in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Class 2 Claim to demand or receive payment of such Allowed Class 2 Claim prior to the stated maturity of such Allowed Class 2 Claim from and after the occurrence of a default;<br><br>(ii) be paid in full in Cash in an amount equal to such Allowed Class 2 Claim, including postpetition interest, if any, on such Allowed Class 2 Claim required to be paid pursuant to section 506 of the Bankruptcy Code, on the later of (a) the Initial Distribution Date or (b) the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when a Class 2 Claim becomes an Allowed Class 2 Claim or (ii) 30 days after the date when a Class 2 Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Class 2 Claim; or<br><br>(iii) receive the collateral securing its Allowed Class 2 Claim.<br><br>Nothing in Article 4.2 of the Plan or elsewhere in the Plan shall preclude the Reorganized Debtors, as applicable, from challenging the validity of any alleged Lien or any asset of the Debtors or the value of the property that secures any alleged Lien. |
| **Class 3-A Claims: Unsecured Notes Claims**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• Except to the extent that a Holder of an Allowed Class 3-A Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Class 3-A Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 3-A Claim shall receive cash in an amount equal to 100% of such Allowed Claim, plus post-Petition Date interest (if any) for the period between the Petition Date and the Effective Date at the Federal judgment rate or such |

8

| | |
|---|---|
| | other rate as minimally necessary (only if payment of interest is required) to leave such Allowed Class 3-A Claim Unimpaired. |
| **Class 3-B Claims: General Unsecured Claims**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• Except as otherwise provided in and subject to Article 9.5 of the Plan, and except to the extent that a Holder of an Allowed Class 3-B Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Class 3-B Claim, each Holder of an Allowed Class 3-B Claim shall receive the following treatment: (a) in the case of Allowed Class 3-B Claims that are not due and payable as of the Effective Date, each such Claim shall be reinstated (in accordance with section 1124(2) of the Bankruptcy Code) and paid in the ordinary course of business pursuant to the respective terms relating to such Claim; or (b) in the case of Allowed Class 3-B Claims that are due and payable as of the Effective Date, each such Claim shall be paid in full in Cash in an amount equal to 100% of the Allowed amount of such Claim, plus post-Petition Date interest at three percent (3%) per annum accrued for the period between the Petition Date and the Effective Date, only if the Creditors' Committee: (i) supports (and does not directly or indirectly oppose, challenge or object to) confirmation of the Plan, approval of the Disclosure Statement, approval of the Plan Support Agreement and approval of related Debtor motions and (ii) does not (directly or indirectly) advocate for or support any alternative plan or plan process, or any formal or informal opposition, challenge or objection to confirmation of the Plan, approval of the Disclosure Statement, approval of the Plan Support Agreement or approval of directly related Debtor motions.<br><br>In the event the conditions in the foregoing clauses "(i)" and "(ii)" are not satisfied, then instead of receiving the treatment provided for in the foregoing clause "(b)" each applicable holder of an Allowed Class 3-B Claim shall receive Cash in an amount equal to 100% of the Allowed amount of such Claim, plus post-Petition Date Interest (if any) at the Federal judgment rate or such other rate as necessary to leave such Allowed Claim unimpaired, for the period between the Petition Date and the Effective Date. Notwithstanding the foregoing, the Creditors' Committee shall not be deemed to have violated this provision by providing to the Debtors and/or the Plan Sponsor comments, or requesting changes, to any document, agreement or filing. |

9

|  | All payments and distributions on account of Allowed Class 3-B Claims shall be made as set forth above on the later of (i) the Initial Distribution Date or (ii) if a Class 3-B Claim is a Disputed Claim, the first Periodic Distribution Date occurring after the later of (y) 30 days after the date when a Class 3-B Claim becomes an Allowed Class 3-B Claim or (z) 30 days after the date when a Class 3-B Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Class 3-B Claim. |
|---|---|
| **Class 4 Claims: Intercompany Claims**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• On the Effective Date, all net Allowed Class 4 Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors between and among the Debtors and/or any Affiliates of the Debtors shall, at the election of the Debtors, with the consent of the Plan Sponsor, or the Reorganized Debtors, as applicable, be either (i) Reinstated, or (ii) released, waived, and discharged. |
| **Class 5 Claims: Intercompany Interests**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• On the Effective Date, all Class 5 Interests held by the Debtors shall be Reinstated. The foregoing treatment of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of Existing Optima Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims. For the avoidance of doubt, any Interest in any non-Debtor subsidiary owned by a Debtor (if any) shall continue to be owned by the applicable Reorganized Debtor. |
| **Class 6 Interests: Existing Optima Equity Interests**<br><br>**Estimated Recovery: 100%** | • **Unimpaired.**<br><br>• On the Effective Date, Allowed Class 6 Existing Optima Equity Interests shall be Reinstated and Unimpaired and shall not be discharged, canceled, released, extinguished or otherwise altered as a result of or by the Plan Support Agreement or the Plan, and the Plan Sponsor as Holder of all Existing Optima Equity Interests shall continue on the Effective Date to hold all |

|   | Existing Optima Equity Interests without interruption. |
|---|---|

## ADMINISTRATIVE CLAIMS BAR DATE

Pursuant to section 2.1 of the Plan, **each Entity that holds or wishes to assert an administrative expense claim** against the Debtors' Estates pursuant to sections 503(b), 507(a)(2) or any other applicable section of the Bankruptcy Code, including without limitation administrative expense claims arising under an Executory Contract, except for claims arising under section 503(b)(9) of the Bankruptcy Code, which are subject to the Bar Date Order entered by the Bankruptcy Court on March 10, 2017 [Docket No. 382], **shall have no later than thirty (30) days after the Effective Date to file such Administrative Claim** (the "**Administrative Claims Bar Date**"), unless otherwise ordered by the Bankruptcy Court. Notwithstanding the foregoing, no filing is required for any of the following: (i) DIP Claims, (ii) Professional Claims, (iii) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (iv) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transactions giving rise to such Administrative Claims.

The request for payment of any such Administrative Claim shall be filed with the Clerk of the Bankruptcy Court for the District of Delaware or the Claims Agent, **so as to be actually received on or before the Administrative Claims Bar Date**, and all Administrative Claims requests shall be in writing, provide with specificity the legal and factual basis for the alleged claim, including supporting documentation or an explanation as to why documentation is not available, and be signed by the claimant or an authorized agent of the claimant. Administrative Claims shall be filed as follows:

Via first class mail:

Optima Specialty Steel, Inc. Case Administration
c/o GCG
PO Box 10355
Dublin, OH 43017-5555

Via overnight courier or hand delivery:

Optima Specialty Steel, Inc. Case Administration
c/o GCG
5151 Blazer Parkway, Suite A
Dublin, OH 43017

ANY HOLDER OF AN ADMINISTRATIVE CLAIM AGAINST THE DEBTORS THAT IS REQUIRED TO FILE A REQUEST FOR PAYMENT OF ADMINISTRATIVE CLAIM BY THE ADMINISTRATIVE CLAIMS BAR DATE BUT FAILS TO DO SO PROPERLY ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH

11

CLAIM AGAINST THE DEBTORS (OR FILING A SIMILAR REQUEST FOR ALLOWANCE THEREOF), AND THE DEBTORS AND THEIR PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM.

## RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS

Article X of the Plan contains the discharge, release, exculpation and injunction provisions set forth below:

10.2 **Discharge of the Debtors.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, and effective as of the Effective Date: (a) the distributions and rights that are provided in the Plan, if any, and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, and rights against the Debtors or any of their assets or properties (except for the Excluded DIP Obligations), regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and rights, including, but not limited to, Claims that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a proof of Claim or interest based upon such Claim, debt, or right is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim or interest based upon such Claim, debt, or right is Allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim or right accepted the Plan; (b) the Plan shall bind all Holders of Claims and Interests; (c) all Claims shall be satisfied, discharged, and released in full (except for the Excluded DIP Obligations), and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date (except for the Excluded DIP Obligations). The Confirmation Order shall be a judicial determination of the discharge of all Claims against the Debtors, subject to the occurrence of the Effective Date.

10.4 **Release by Debtors.** Pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, the Debtors and their Estates, and the Reorganized Debtors shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Avoidance Actions, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising

from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, Plan, the Disclosure Statement, the Plan Support Agreement, the Plan Supplement, the Exit Revolver Facility, the Exit Term Loan Facility, any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by final non-appealable order to constitute willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt, nothing in this paragraph shall in any way affect the operation of Article 10.2 of the Plan, pursuant to section 1141(d) of the Bankruptcy Code.

Pursuant to section 1.124 of the Plan, "**Released Parties**" means each of the following in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Plan Sponsor; (d) the Secured Notes Indenture Trustee; and (e) with respect to each of the above-named Entities described in subsections (a) through (c), such Entity's respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, principals, partners, managed funds, parents, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**10.5** **Release by Holders of Claims and Interests. As of the Effective Date, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Debtors, the Reorganized Debtors, their Estates, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility (except for the Excluded DIP Obligations), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, the Plan, the Disclosure Statement, the Plan Support Agreement, the Plan Supplement, the Exit Revolver Facility, the Exit Term Loan Facility any other Plan Transaction Document, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other**

occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by final non-appealable order to constitute willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not: (i) release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) release or Impair any Allowed Claim, any Indemnification Obligations owed to any Indemnittee, or any Interest Reinstated under the terms of the Plan.

For the avoidance of doubt, except as expressly provided in the Plan, nothing in Article 10.5 of the Plan shall in any way affect the operation of Article 10.2 of the Plan, pursuant to section 1141(d) of the Bankruptcy Code.

Pursuant to section 1.125 of the Plan, "**Releasing Parties**" means each of the following in their respective capacities as such: (a) the Released Parties, (b) all Holders of Claims and Interests, and (c) with respect to each of the foregoing Entities in subparts (a) and (b), their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals

10.6 **General Release of Plan Sponsor by Debtors, the Debtors' Estates and the Reorganized Debtors.** In consideration for the Plan Sponsor Contribution, and pursuant to Bankruptcy Rule 9019(a) and Article 10.3 of the Plan, upon the occurrence of the Effective Date, (a) the Debtors, (b) the Debtors' estates, (c) the Reorganized Debtors, and (d) with respect to each of the foregoing Entities in subparts (a) through (c), their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (all of the foregoing in their respective capacities as such), shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Plan Sponsor and each of the Plan Sponsor's Affiliates, and each of their respective predecessors, successors and assigns, and current and former direct and indirect stockholders, members, limited partners, general partners, equity holders, principals, partners, managed funds, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants (the foregoing including without limitation (x) Mordechai Korf, (y) Gennadiy Bogolyubov, and (z) Igor Kolomoyskyy), from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, owned, held, asserted or assertable by or on behalf of the Debtors, the Debtors' Estates or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any such Entity would have been legally or equitably entitled to assert (whether individually or collectively) based upon, or in any way relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan. For the avoidance of doubt, the releases provided for by Article 10.6 of the Plan are, and are intended to be, general releases. Notwithstanding anything to

the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

For the avoidance of doubt, except as expressly provided in the Plan, nothing in Article 10.6 of the Plan shall in any way affect the operation of Article 10.2 of the Plan, pursuant to section 1141(d) of the Bankruptcy Code.

10.7 **Exculpation and Limitation of Liability.** The Exculpated Parties shall neither have nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are not and shall not be liable at any time for the violations of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Pursuant to section 1.61 of the Plan, "**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' restructuring, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the settlement of Claims or renegotiation of Executory Contracts or Unexpired Leases, the negotiation of the Plan, the DIP Credit Agreement, the Plan Support Agreement (including the term sheets attached thereto), the Plan Supplement, the Exit Revolver Facility, the Exit Term Loan Facility, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, the distribution of property under the Plan, or any transaction contemplated by the Plan or Disclosure Statement, or in furtherance thereof; provided, however, that Claims relating to the Excluded DIP Obligations shall not constitute Exculpated Claims.

Pursuant to Section 1.62 of the Plan, "**Exculpated Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Creditors' Committee and each of its members; and (d) with respect to each of the above-named Entities described in subsections (a) through (c), such Entity's respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, principals, partners, managed funds, parents, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

10.10 **Injunction.** The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as an injunction, from and after the Effective Date, against any Entity (a) commencing or continuing in any manner or in any place, any action, employment of process, or other proceeding; (b) enforcing, attaching, collecting, or

recovering in any manner any judgment, award, decree or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, except as set forth in Article 9.10 or 9.11 of the Plan, in each case with respect to any Claim, or Cause of Action satisfied, released or to be released, exculpated or to be exculpated, or discharged under the Plan or pursuant to the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 and 1141 thereof; provided, however, that nothing contained in the Plan shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order; and provided further, however, that nothing contained in the Plan shall preclude the DIP Agent of the DIP Lenders from exercising any appropriate remedies against the Reorganized Debtors in connection with any Excluded DIP Obligations.

13.17 **Waiver of Limitations on Releases of Unknown Claims.** Each of the Releasing Parties and Released Parties agree and acknowledge, or shall be deemed to agree and acknowledge, that the releases contained in Articles 10.4, 10.5 and 10.6 of the Plan extend to Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities that the parties do not know or expect to exist at the time of the release, which, if known, might have affected the decision to enter into the release and which each of the Releasing Parties and Released Parties shall be deemed to waive, and shall waive and relinquish to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory thereof, or principle of common law, which governs or limits a person's release of unknown claims; further, with respect to any and all such Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, including any and all unknown claims that the Releasing Parties and Released Parties shall be deemed to waive, and shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Releasing Parties and Released Parties also shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542. The Releasing Parties and Released Parties also acknowledge, or shall be deemed to acknowledge, that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is the intention of the parties to fully, finally, and forever settle and release with prejudice any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities conceivably within the scope of the releases contained in Articles 10.4, 10.5 and 10.6, including any and all unknown claims, without regard to the subsequent discovery or existence of additional or different facts. Such parties expressly agree, or shall be deemed to expressly agree,

that any fraudulent inducement or similar claims that could be premised on unknown facts or facts that are subsequently discovered are included within the definition of unknown claims.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan, you nevertheless may be a party in interest in these Chapter 11 Cases and you therefore may be entitled to participate in these Chapter 11 Cases, including by filing objections to Confirmation of the Plan. **Objections, if any, to Confirmation of the Plan, including any supporting memoranda, must** (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any Plan Objection; and (iv) be filed with the Court, together with proof of service, and served so that they are actually received on or before **June 22, 2017 at 4:00 p.m. (prevailing Eastern Time)** by the following parties: (a) counsel to the Debtors, (1) Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Dennis A. Meloro, Esq.), and (2) Greenberg Traurig, LLP, 333 S.E. 2nd Avenue, Suite 4400, Miami, Florida 33131 (Attn: Paul J. Keenan Jr., Esq.); (b) counsel to the Plan Sponsor, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, Delaware 19899 (Attn: Mark S. Chehi, Esq.); (c) counsel to the DIP Lenders, Latham & Watkins, LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611 (Attn: Richard A. Levy, Esq.); (d) counsel to the Official Committee of Unsecured Creditors, (1) Squire Patton Boggs (US) LLP, 221 E. Fourth Street, Suite 2900, Cincinnati, Ohio 45202 (Attn: Stephen Lerner, Esq.), and (2) Squire Patton Boggs (US) LLP, 30 Rockefeller Plaza, 23rd Floor, New York, New York 10112 (Attn: Norman Kinel, Esq. and Nava Hazan, Esq.).

**OBJECTIONS TO CONFIRMATION OF THE PLAN NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

## COPIES OF THE PLAN AND DISCLOSURE STATEMENT

The Disclosure Statement and the Plan are on file with the Clerk of the Bankruptcy Court and may be examined by any interested party at the Clerk's office at any time during regular business hours or by requesting a copy of the documents from the Claims Agent via (i) first-class mail addressed to Optima Specialty Steel, Inc. Case Administration, c/o GCG, PO Box 10355, Dublin, OH 43017-5555, or personal delivery or overnight courier addressed to Optima Specialty Steel, Inc. Case Administration, c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, OH 43017, (ii) telephoning the Claims Agent at (866) 550 5957 or (iii) e-mailing a request to the Claims Agent at OMAinfo@gardencitygroup.com.

In addition, copies of the Plan and the Disclosure Statement are available to be viewed and printed free of charge on the Debtors' case website (http://cases.gardencitygroup.com/OMA) or at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

Dated: [_____], 2017         GREENBERG TRAURIG, LLP

/s/_____
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: melorod@gtlaw.com

-and-

Paul J. Keenan Jr. (*admitted pro hac vice*)
John R. Dodd (*admitted pro hac vice*)
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: keenanp@gtlaw.com
       doddj@gtlaw.com

*Counsel for the Debtors
and Debtors-in-Possession*